May it please the court, my name is David Stoller. I'm a private attorney in Orlando, Florida and I represent Albana Avulliia. That's my best guess at it. This case involves the issue of the doctrine of consular non-reviewability. Facts are fairly straightforward. The petitioner is a U.S. citizen. The visa applicants are spouses. He had previously been married, had a visa petition in I-130 approved. He had gone to an interview at the U.S. consular office in Toronto, Albania. They suspected fraud. The case was sent back to the United affirmed the decision saying that the marriage had been entered for the purpose of evading the immigration laws. So they divorced. The petitioner married the same gentleman, filed a petition in I-130 with U.S. Citizenship and Immigration Services. That petition was approved. And when that petition was approved, it was sent over to the consular office for an One has to do with affidavit of support. That's the 1182A4 charge. And the second was an issue of fraud. And that's really the crux of where our case is or our argument is with the decision. The issue from the consular office's perspective was that the same fraud that they believed had occurred with regards to the prior marriage was also grounds for which to determine under 1182A6Ci that the individual was ineligible for issuance of the visa. So they issued a refusal sheet, denied the visa, and we found ourselves before the district court seeking essentially judicial review, trying to argue an exception to the doctrine of consular non-reviewability. We concede with the issue that the doctrine is such that the courts are very apprehensive about reviewing decisions that are made by the consulate. It's an issue of separation of powers, and we're not here to try and overtake or overcome this longstanding doctrine. But there's an issue that arises when the decision is not bona fide or rests upon matters that, the way we are arguing it, are legally impossible. The very fraud that the consulate is alleging is fraud that would have, should have, prevented USCIS from approving the visa petition at hand here. There's a provision under law, 8 U.S.C. 1154C, that says that if at any time U.S. Citizenship and Immigration Services believe that a marriage was entered for the purpose of evading immigration laws, that they cannot approve a subsequent petition, as was done here, which is, there's a subsequent marriage, the U.S. Citizen files for the same beneficiary, against whom this prior 1154C determination had been made. But for whatever reason, and I can't explain it, the petition was approved and sent over to the consulate. So the thing is... Counsel, do you have a case that supports that if the agency makes a mistake and grants the I-130 without realizing, in this case, that he'd previously been denied based on marriage fraud, that the agency is bound by the I-130 approval? And if it subsequently discovers marriage fraud is stopped to take any action? Yeah, I can't cite a case to the court, and that was an issue that the district court had, that there was no case we could provide to say, as you would suggest, that there's a stopple. We're not trying to argue that the government, that the consular officer was stopped from making the determination. But the issue is, if in the subsequent review of the time around, if the agency, USCIS, determined, for whatever reason it may be, that there was no marriage fraud, then the problem is that the consulate then says, okay, well, we have this approved petition, we're going to go ahead and process it, but we're going to process it as if the agency had previously made this marriage fraud determination. But in other words... We revoke naturalization after an alien has been naturalized, if we discover, subsequent to the naturalization, that fraud occurred. So I guess I'm not understanding your argument here. If the agency made a mistake and shouldn't have issued the second I-130, what prevents it from correcting the error when, during the interview, the consulate official says, oh, no, I'm sorry, you're not entitled to a visa here because you previously attempted to obtain alien benefits illegally. I would agree with you, your honor. And the right way to handle that is to do exactly what had happened the first time around, which was the I-130 was approved with regards to the first marriage. They got to the interview at the consulate, and during the interview at the consulate, issues arose. The consular officer says, I'm not going to issue this visa. I'm going to send it back to USCIS and let them deal with it, along with notes that say, we think that there may have been something going on, some shenanigans in this relationship. You guys take care of it because this is in your wheelhouse, not in ours. And the problem is, if this thing moves forward, then arguably the beneficiary here, Mr. Apulia, can obtain a benefit through what appears to be knowledge of the suspected marriage fraud, and obtain a waiver, come into the United States, and create this whole mess that is supposed to be prevented by USCIS invoking 1154C. And so there was a manner available to the consulate in order to fix the problem. But what the consulate did is said, okay, well, the I-130 was approved. The consulate should have known that there was an issue with the prior marriage. Indeed, that's why they say, okay, we're going to refuse on this 1182C ground, and then allowing the foreign national to apply for a waiver to waive something that cannot be waived. That's the whole issue of this legal impossibility. The consulate is essentially engaging in review of these marriages in the way that USCIS is supposed to have done. But USCIS said, well, we're going to send this I-130 along and let the case move forward. And the consulate's not in the position to try and review whether these visa petitions should be approved or not, that they can determine whether the visa should be issued or not, and are well within their right to send the application back to USCIS. But the way things were- But the release that you thought was by mandamus to compel the Secretary of State to issue the visa, and the Supreme Court has said, we don't have the authority to do that if, after we look at the matter, I guess, facially, and determine that the State Department cited legitimate and bona fide bases to deny issuance of the visa, that's the end of the inquiry. And I 100% agree with that. But the problem is, is that it's not facially legitimate if the whole reason underlying the denial is something that should have prevented the approval of the I-130 in the first place. You can't- Well, we're back to my first question, which is what case do you have that supports that BCIS is stopped to take adverse action because they mistakenly issued the I-130 the second time? And again, the response is the same. I don't have an answer to give you with a case that says that, and I certainly think that this is certainly not the way that I expected this case to move along when I took it initially. And it is kind of an outlier in regards to, I mean, I've never seen this in my 25 years of practicing immigration law. So there is no, nothing is to stop them. But the problem is, is that if eventually the alien is to be granted a waiver around that very same fraud, then the consulate is saying, well, you engaged in marriage fraud, but we're going to give you a visa that you shouldn't have anyways. And that's not the way to put forth what Congress intended in the way it set the system up to allow the Secretary of the Department of Homeland Security to make these determinations and determine if there's marriage fraud in the past, we can prohibit the approval of that subsequent petition. Now, there's a related issue here, which deals with the concept of the public charge, this 1182A4 issue. And I would suggest to the court that that's more of a red herring. While certainly there's a question about the domicile of the petitioner, that's generally an issue that can be resolved with some additional documentation that the, I'm sorry, that the visa applicant was never provided the opportunity to provide. So the way things sit right now is that at the consulate, the individual is to allow him to enter the United States on a, through a marriage, through a marriage petition that 1154C should have prohibited from approval. And the right way for the consulate to have dealt with the case would have been to send it back to USCIS as it had done the first time around in order to have them determine whether or not this 1154C issue would apply. But you're asking us to exactly what the doctrine of consular non-reviewability forbids. You want us to look at the underlying merits of the grounds on which the visa was denied. I do not. The basis of the denial is in itself the reason why there is no bona fide explanation and that the simple citation to the statute makes the determination the consulate made legally impossible. There is no way to deny the visa as being based on a bogus marriage if the basis of the visa itself to get to the consulate is that there was no prior bogus marriage. I just don't read the Supreme Court decision in Kleindienst and Kerry the same way you're trying to interpret them. Well, I mean, if you look at Kleindienst, the issue there is that the consulate said, hey, look, this guy has been involved in some communist activities. It's a national security concern, an area where certainly the executive department is given a wide berth in doing what it's going to do, and the courts are very reluctant to enter into that scope. When you look at Kerry versus Dinn, in that case, the spouse, the beneficiary of the petition, admitted that he was involved with the Taliban. When they issued the refusal letter and cited to the provision of the Immigration Nationality Act dealing with terrorist grounds of inadmissibility, the whole issue was, we want you to tell us what it is that gave you the basis to make this determination, knowing that the individual had a relationship with a terrorist organization. There's no... Mr. Stoller, you had reserved three minutes for rebuttal, so if you'll wind up, we'll give you your full time for rebuttal. Okay, then I'll leave it right there, but let me just say the following thing on Kerry versus Dinn. There wasn't a ground of legal impossibility, as we're arguing here. It's not a question in having it both ways. What the consulate's doing here is trying to have it both ways in a way that is impossible, and I'll leave it there. Thank you. Good afternoon. Ann Wellhoff, respondent, Attorney General Barr. May it please the court. It's well settled, and as recently as the Supreme Court's case of Trump versus Secretary of State, that courts have recognized the admission and exclusion of foreign nationals is a fundamental sovereign attribute, and it's exercised by the government's political department, very largely immune from any judicial review. Under the doctrine of consular non-reviewability, which applies here, the scope of the court's review is extremely, extremely limited, limited to only determining whether the consular officer provided a facially legitimate and bona fide reason for the decision. There can be no dispute in this case that the cited 8 U.S.C. 1182-A-4 and 8 U.S.C. 1182-A-6, the consular officer satisfied her obligation to provide a facially legitimate and bona fide reason for denial or refusal of this visa application. Both, each of those are independently dispositive grounds, whether or not the petitioner, even assuming he would prevail on his argument that the government has somehow stopped, which is the argument he is making for all practical purposes. We still have to deal with the other issue, which is that he hasn't overcome the public charge provision and has not, did not demonstrate to the consular officer's satisfaction that the white citizen had a domicile in the U.S. So, there's two very legitimate and facially bona fide reasons articulated, and that is the beginning and end of this court's inquiry. The scope of the review is just that, and it's been more than satisfied in this case. So, to the extent that petitioners, as for his estoppel argument, basically his argument can amount to saying, well, they messed up and issued her a visa petition or approved it, therefore they're bound by their mistake. That argument finds no support in logic. It doesn't find any support in case law at all. The ability to... I'm sorry. I don't think they're saying, this is Robin Risenbaum. I don't think they're saying that they're bound by their mistake. I mean, they might have been saying that below, but as I understood counsel's argument today, he's saying it has to be sent back to be corrected for consideration, I guess. And customs, USCIS can go ahead and make the change if they want to do it, but the consulate cannot. I think that's what their argument is. So, I didn't want to make sure they're addressing that. Well, certainly, if the court was to accept the petitioner's argument here, that would mean that person who was granted a relative petition by USCIS basically is the consular officer must issue them the visa. That's simply not how the law works. You have USCIS, their responsibility is to do a limited amount of inquiry to determine whether a beneficiary appears to be eligible for the particular visa sought. And all the I-130 did was say, okay, here, you are married. We see that. And you can now go ahead and apply for your immigrant visa. You have to do so at a consulate abroad, but here you go, you have the paper to do it. It's not a done deal at that point. Then, the consular officer has a whole flurry of things that they need to go through to investigate. They interview the applicant. They make the judgment call on whether to admit this applicant or not. And to say that... Well, this is Debra Lee Martin. I understand all that. This is, you know, not my field. But, I mean, you say that USCIS does a limited inquiry, but the real fact-finding is left to the consular officer. That's what you're saying, right? Well, I am saying that... I mean, I'm not trying to trick you. All I want to know is... You know, can you show me the statute or the regulation or the case that encapsulates your reason for saying that's the law? My reasons for saying that the State Department has... What you just said to us that USCIS, and I think I read this down right, they just do a limited inquiry and then it goes to the consular office to do the actual review. Well, under 1181 and 82, that is talking specifically about USCIS's obligations in the context of issuing or granting relative petitions and other types of petitions to labor certifications, whatever it may be. And it clearly, the authority to do so is vested within USCIS to do so. However, that is in no way a guarantee that you will be admitted and that you're entitled to a visa. That is simply saying they've done the inquiry. You appear to be married. Yeah, I understand that. I'm not disagreeing. I just want to know, I mean, so where does it come from that all the fact-finding is left to the consular officer? Well, I guess maybe I misspoke. Should they have done more fact-finding and discovered that USCIS in this case? I think they probably should have discovered it. I'm not sure why they didn't. But the fact that they didn't see, oh, here's a board decision. So I'm not sure why they didn't see it. It was pretty out there. But once it goes under 1151, which is also under the INA, but it's talking about the issuance of the visa itself. And it's referring to the Secretary of State and what his obligations are through his consular officer. And his obligation is to investigate whether they are admissible to the country, whether they are eligible for the visa. And the consular officer has three options. Either issue the visa or refuse the visa. I'm sorry. Those are really the only two options. If more evidence is needed, they can do a deferral of the decision. They can defer and say we'll bring. For example, in this case, I don't know petitioner didn't ask for a deferral and then come back with proof of domicile or something. That would have possibly taken care of the one ground of admissibility. It would seem if she's domiciled in the United States, it would seem easy to document that she never has done that. So that's one ground for denial that was cited. And it could have been rectified, but was not. As far as the second ground, under the regulations, the consular officer is, if they, in the context of reviewing the visa application, as they did here, if they discover, it looks like this visa petition was approved erroneously, the regulations say they may refer it back to CIS and bring it to CIS's attention for them to do whatever they may choose to do with it. And in fact, that's exactly what happened in this particular case. The very first time around, they sent it back and revoked it. But there's no, I mean, the consular officer is the sole adjudicator and their obligations were satisfied in this case. They cited two legitimate facially bona fide reasons. I don't hear anything that nor do I read anything in the documents filed in any of these proceedings for him to say those reasons weren't legitimate. He's just not denying there was a fraudulent marriage. I mean, I think that, I believe they admitted there was, or at least they admit that the Attorney General found that there was documents to that effect. Counsel, I'm sorry. I think the concern is more of sort of, it's not even necessarily in this case. I mean, I think it's pretty clear in this case that there's no contention that he hadn't previously engaged in a fraudulent marriage, which would exclude him properly. The problem is with respect to the process. And if it goes to the applicant disagrees that it can be subject to some kind of review within immigration. But then if the decision is being made by the consular authority based on facts that turn out to be wrong, then that might be problematic. Now, if there is some statutory authority for the consular person to be making these kinds of fact-finding decisions, that's one thing. But if there isn't, then that's kind of a concern. So I'm, I mean, Judge Martin, you can correct me if I'm wrong, but I'm understanding Judge Martin's question to be what is the authority, the statutory or otherwise authority for the consulate to be making fact-finding determinations? I would cite into the, well, the section that 1150-51, 1152, these are the statutes that state that the, and the regulations that are articulated there under, they are to, in fact, in their discretion, ascertain whether a visa should be issued. And their conduct is not reviewable. The question of whether or not to admit this alien is not reviewable. Now, I would note in this case, after they denied his visa, he did timely petition or bring a case. I'm not even, it sounds to me like he, his, one of his, I guess, issues or complaints is that in this case, the second time around that the consulate did not forward it to you, the CIS, for revocation a second time. I'm not sure that, I don't think that's in the record whether or not that occurred. I don't think it really matters, honestly, but I'm not positive that what the, whether that. So, I'm sorry. Is the petition still sitting out there or not? I'm not sure. It's not in the record. Just to be clear, so clear, you know, obviously the consulate has the authority to exercise its discretion however it wishes to do so, as long as it's doing it within the bounds of the law. And that's why we have, you know, the recognition, even on the, under the doctrine of consular non-reviewability, that, you know, if there's some kind of constitutional violation or it's not a bona fide reason, it's, you know, something of that nature, that it is reviewable. So, the question is in, for this case, and I know you keep pointing to 1151 and 1152, and maybe saying the entirety of those statutes is what you're relying on, but I don't know, do you want to be a little more specific? Yeah. Kind of larger statute. Okay, maybe, sure, sure, because you have to kind of read them all together, but maybe I would refer the court to 8 U.S.C. 1201, which is a statute that says that if an alien gets USCIS to approve a petition, in this case it was a relative petition, that gives you the right to apply for an immigrant visa at a U.S. embassy or consulate, and that's in 1201A. And that's where the consular officer is the sole adjudicator. And the visa application requires that the applicant provide a variety of history, his background. I'd point out at 8 U.S.C. 1202, the alien must appear in front of the consular officer in person for an interview. That's required. If that isn't to gather facts and make, you know, determinations on credibility and whatnot, I don't know what would be. That is the sole purpose of the meeting with the consular officer, to make sure that the person's entitled to receive whatever type of visa it is that they're applying for. And they are the adjudicators of that. Under all the statutes that I've cited so far, and the regulations there under that get a lot more specific about, I guess, what you'd call or what you're looking for is like the fact-finding nature of those interviews that the consular officers actually conduct. I'm just looking for something that says, you know, the consular officer has the authority to conduct further factual, to conduct further fact-finding or something like that. You know what I mean? Yeah, I think I do. I would say what they do, the authorities, they have a statutory mandate to determine whether the person did, to even get a visa, you must be admissible. That's a statutory mandate on them. The consular officer is required to say, is this person admissible to the U.S.? And this consular officer looked at that question and said, no, because it looks like we had him in the same environment. So, it's not only their, you know, right, it's their obligation to make the inquiries to ensure they don't issue a visa to someone who's otherwise inadmissible, like this applicant was. And that's a statutory scheme that starts out at 1201 and all the regulations and the statutes that follow that. And again, they all refer to the Secretary of State, the consular officer, and what their duties and obligations are in the process of issuing a visa. And that's clearly delegated to them. Thank you, Ms. Welhoff. Appreciate it. You're welcome. Thank you. David Stoller here again on Weboto. I think the provision of law that Ms. Welhoff is trying to tell the court is 1201G, non-issuance of visas or other documents. And I would agree that the consular officer has an obligation to make sure that that individual is not inadmissible. The problem with that is that 8 U.S.C. 1154C says, and I quote, notwithstanding the provisions of subsection B, no petition shall be approved if the alien has previously been accorded or a marriage determined by the Attorney General to have been entered for the purpose of evading the immigration laws. So if a petition has been approved and that petition sent from the U.S., from USCIS to the National Visa Center, National Visa Center over to the consulate, then that must mean that the U.S., that the Department of Homeland Security made a determination that there was not a sham marriage preceding the approval of that petition because the petition could not be approved if there was. Counsel, that's not, I'm not sure that's right. That USCIS basically is presented with a petition from an American citizen who says, I'm married and here's the person I'm married to. And I need an entry visa for my alien husband. And if at that point USCIS agrees that the person is married, then it issues the I-130 and the State Department official in the country where the alien is located is tasked with the responsibility of deciding whether or not he qualifies for an entry visa. And that may very well involve making investigations locally, although it's usually just an interview at the U.S. Embassy. Isn't that how the system works? And if the officer finds some grounds of inadmissibility, then he's empowered to refuse to issue the visa. And I would agree in the sense that the officer is empowered under 1201G to refuse the visa if they find that ineligibility occurs. The problem is that the front end of the process, which is with the Department of Homeland Security, is for the very purpose of trying to determine what is the immigration status of the petitioner, U.S. citizen here, what is the relationship between the petitioner and the beneficiary, spousal relationship, and are there any prohibitions on the approval of this petition? So if the I-130 is approved, that is the Department of Homeland Security within whose wheelhouse the entire process is based. That's not to suggest that the consular officer cannot look into it further. Indeed, in this case, that's what happened the first time around. The I-130 was approved. But isn't it a conditional approval and the condition is satisfactorily passing, I'll call it the background investigation, by the consular official. And if the consular official discovers a disabling fact, prior marriage fraud, then the I-130 approval does not result in the issuance of a visa. I mean, all the I-130 does is that allows you to trigger the investigation by the Department of State. Well, that logic then says that the Department of Homeland Security washes its hands of the process once it determines based on whatever scant evidence it might have before it. No, it waits for the consular official's report following the interview and whatever investigation the consular official determines is needed for verification that this person is an admissible alien. And indeed, that would require that the investigation be sent back to the Department of Homeland Security for revocation of the visa were the consular officer to determine that something came up in that investigation. That's what happened. It's the Secretary of State who issues the visa, is it not? Agreed. And it's the Secretary of the Department of Homeland Security who determines whether a marriage is entered for the right reasons and whether or not there's a prohibition on the approval of that petition. In this case, what happened is the Secretary of State said, well, I really don't care what the Secretary of the Department of Homeland Security said. We're going to refuse the visa. Your argument has expired. May I respond? Go ahead and finish your answer. Sorry, sorry. So the Secretary of State said, well, we don't care that that thing was approved. We don't care what 1154C says. Nevertheless, we are going to determine that there was a bogus marriage in the background, and we are going to deny the application flat out and essentially give the individual the opportunity to enter the United States, notwithstanding the fact that they made a determination that there was a prior marriage that was a sham. Deny the application or deny issuance of the visa? Those are two different acts, are they not? Correct. Because if the State Department reports back to DHS that this individual is clean, then presumably the USCIS then proceeds to do whatever it does after they've issued the I-130, or maybe they issued some sort of a, I don't know, a green card or some sort of status card that permits the alien to come to the United States. If it all had worked the way it would work, the way it would function, is that the individual would be issued an immigrant visa, be given a package in a manila envelope, come to fly into the United States, present themselves at a port of entry, and a green card would be issued. You're right. The problem with the procedure that you're discussing is that there is no report back unless there is some ground for revocation that the State Department finds in the context of doing the investigation authorized under 1201G. But they're not authorized. And the ground discovered was prior marriage fraud. And that would mean sending the approved petition back for revocation, not what happened here. But who cares? I mean, they just won't issue the visa, so the alien never gets to come to the United States. Well, that's the thing, Your Honor. That's not true here. Because this gentleman can enter the United States with these facts if he obtains a waiver of admissibility. And that is what 1154C says should not happen. All right. Just tell me if you've had your questions addressed. We will end it there. I think I've asked as many as I can think of. Thank you. Thank you, Gail. We appreciate the argument.